**PINE MOUNTAIN IRON & COAL CO. et al. v. BAILEY et al.**

(Circuit Court, D. Minnesota.  March 12, 1898.)

AGENT OF SELLER AND BUYER — AGENT'S KNOWLEDGE — EFFECT ON BUYER'S TITLE.

> An agent and director of a trust company sold a mortgage belonging to the company to one for whom he sometimes acted as agent in similar transactions, and who was depending on his judgment as to the safety of the investment.  *Held*, that the agent's knowledge of defects in the title should not be imputed to the purchaser.

Richards, Boskin & Ronald and Keith, Evans, Thompson & Fairchild, for complainants.

Wilson & Van Derlip, for defendants.

LOCHREN, District Judge (orally).  The evidence shows that the plaintiffs, corporations of the state of Kentucky, on August 10,

1892, at Louisville, Ky., entered into a written contract with John D. Blake, of Minneapolis, Minn., by the terms of which he was acquiring property rights, and on his part contracted to convey to plaintiffs, or one of them, real estate situate in Minnesota, and preferably in Minneapolis, to the amount in value of $100,000, the values to be affixed by appraisers, and that of this land there should be no part on which there should be mortgages for more than half the value, and the mortgages on the whole should not aggregate more than $20,000 on the $100,000 worth of property. The appraisal was had, and on the 25th of October following he presented deeds to these companies, containing descriptions of the land which he offered them, and I suppose, also, of the incumbrances upon the lands, for among the descriptions was a statement of this mortgage of $17,200 to the Metropolitan Trust Company of Minneapolis, dated August 29, 1892. Objection was made to this mortgage, and a supplementary agreement was entered into between the parties at the time, upon which it was agreed that the reception of the deed should not prevent plaintiffs from objecting to the validity of this mortgage. I really do not understand how plaintiffs would be in a situation at that time to object to that mortgage if it had been delivered at the time it was dated, even although it was subsequent to their agreement in relation to these lands, because no particular land had been designated as the land to be conveyed. Blake was to select and have appraised and offer to plaintiffs lands to the amount of certain values in Minnesota, but there was nothing to prevent him from selling any of the lands that he owned in the meantime. If the mortgages should exist upon the lands offered above the amount that was stipulated, that would give the companies a right, of course, to refuse to accept such lands; but I do not see how it would invalidate any conveyances that Blake would make in the meantime, whether mortgages or not. But he certainly would not have a right to put on mortgages after the deeds were made and accepted; and it appears that these deeds of Blake were given to these companies, or one of them, on the 25th of October, and this mortgage was not in fact delivered to the Metropolitan Trust Company until the 27th of October, some two days later, and was put on record that day. If the deed to the Pine Mountain Iron & Coal Company had been recorded promptly, it would probably have come in ahead of the mortgage, but that course was not taken. On the contrary, the notice,—Exhibit L, or Exhibit I,—

Mr. Keith: The deed was recorded the next day after that notice. It was recorded on the 28th.

The Court: This notice it is not needful to dwell upon. It is somewhat vague. It does not state in any way the rights of the Pine Mountain Iron & Coal Company to this land, or any reason why they have a right to object to the giving of any incumbrances upon it by Mr. Blake. But the testimony goes further than that. These contracts, or some of them, were sent to Mr. Moore, reaching him the following day, and he had another interview with the Metropolitan Trust Company upon that day, in which he claims to have notified them more particularly in relation to the

rights of the Pine Mountain Iron & Coal Company in respect to these lands. It seems to be admitted that at this time no consid· eration for that mortgage was paid by the trust company to Blake, and, of course, if there was sufficient notice, it would be in season if given before the consideration was paid upon the mortgage. The testimony shows that Blake did not receive the consideration for this mortgage until the 10th of January, 1893, and that shortly prior to that time Mr. Woodman, who was trust agent and director of the trust company, conferred with Charles M. Bailey by letter, making an offer on behalf of the trust company to sell this mort· gage to him. The testimony shows that for some years previously Mr. Bailey had been making loans in the state of Minnesota, and purchasing mortgages and securities of that kind, and that Mr. Woodman had, to a certain extent at least, acted as his agent in many of these transactions; that he had other agents, at St. Paul, who were interested in the like business. It appears that the re· lations between himself and Mr. Woodman were confidential; that Bailey entrusted a great deal to Mr. Woodman's probity and judg· ment in relation to questions of value and of the titles of the prop· erty upon which he made loans; and I am inclined to think, under the law in respect to principal and agent, that, with reference to any transaction of that kind in which Mr. Woodman had no per· sonal interest, the knowledge which Mr. Woodman would acquire in a transaction, or knowledge of facts which he had previously acquired, and which were present in his mind at the time of the transaction, it would be his duty to apprise Mr. Bailey of, and the law would conclusively presume that he did so apprise him, and such knowledge would be imputed to Mr. Bailey. The exception is in cases where the agent is himself interested in the transaction, and holds a position which is in that respect antagonistic to the interest of the principal. In cases of that kind the law does not impute that knowledge.

Now, it seems that in this case, as I said before, Mr. Woodman was the trust agent and director of the trust company. He had a direct interest in its affairs, and a duty to perform, as trust agent and director, in the management of its affairs, and, so far as he participated in the disposing of its assets, his duty was to get as much for them as possible. It appears that to get money for that company this mortgage was formally assigned to him, and that he got money from the Flour City Bank upon his own note to the amount secured by this mortgage, and gave the bank this mortgage as collateral to his own note, and that this was the situation when the sale was finally made to Charles M. Bailey of the mortgage. Woodman wrote to Bailey, as he had been accustomed to do with reference to other matters, describing the mortgage, stating its amount, and giving his estimate of the security, and also of the financial responsibility of the maker of the note and mortgage, and advising Mr. Bailey to buy it as a safe and good investment; and upon these representations Mr. Bailey finally did purchase the mortgage upon terms that were agreed upon between himself and Mr. Woodman,—not entirely upon the terms that Mr. Woodman

first offered, because he asked better terms; that is, he asked that he should have the January interest, although the transaction was not completed until the 27th of January. This Mr. Woodman did not agree to, but offered, doubtless with the assent of the trust company, to divide the commission which the trust company had received from Blake, and which altogether amounted to about $122, with Mr. Bailey in case he purchased; and this was accepted.

It appears from the testimony, and it seems to be conceded, that Mr. Bailey in this transaction was personally innocent of any knowledge as to any defects in the title to this mortgage; that he bought it in entire good faith, and paid the full consideration for it. If his title is to be assailed, it must be entirely upon this imputed knowledge of Mr. Woodman as agent, and the question is whether Mr. Woodman was in such a position that his knowledge of the matter, which was complete, can be imputed to Charles M. Bailey.

As I said, he was trust agent and director of the trust company. At the time when these negotiations took place it appears that he had been requested by another officer of the company, Mr. Cooke, to dispose of this very mortgage. It had, therefore, been placed in his hands to dispose of as the agent of the trust company. He had assumed the sale of that mortgage, acting as the agent of the company. It hardly seems correct to hold, under those circumstances, that he must also be treated as the agent of the buyer.

It seems, further, that he was connected with it in the way I have suggested, by having had it assigned to him, so that the nominal title to the mortgage and note was in him at that time; although I am inclined to think, from all the circumstances of the case, that this was a sort of shifty proceeding upon the part of the trust company to get the money in hand at the time, and prior to making an absolute sale of the mortgage to some other person, and probably with some understanding that he was not to be considered as the absolute holder, and the trust company as having nothing further to do with it. But it enabled the trust company to get the money, for it appears that Woodman turned the money over to the trust company when he got it from the bank. The title, therefore, of this property that he was selling to Bailey, was nominally in himself, although it was really the title of the trust company.

Under his authority to sell it, he did more than to bring the parties together to allow them to trade with each other. He negotiated the terms of the sale himself, and himself agreed to give up half of the commission, though with the assent of the trust company. I am inclined to think his connection with the trust company and with the mortgage was such that he would be necessarily interested in protecting the trust company, and in representing the mortgage which it had for sale to be valuable, and to conceal whatever would make it unsalable; and that, under the circumstances, there is no inference that he would disclose a defect to a purchaser to whom he was anxious to sell, especially in the case of a defect which he himself did not really deem a substantial de-

fect, so that he would consider himself as acting dishonestly in failing to disclose it, but still a defect which he would naturally regard as likely to deter as cautious a man as Bailey from buying the mortgage if it had been disclosed.

I think, on the whole case, that the defendant is entitled to a decree dismissing the bill, with costs.